IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHONDA L. MCGEE,                    )
                                    )
            Plaintiff,              )
                                    )
v.                                  )        CIVIL ACTION NO. 19-0371-MU
                                    )
ANDREW M. SAUL,                     )
Commissioner of Social Security,    )
                                    )
            Defendant.              )

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Shonda L. McGee brings this action, pursuant to 42 U.S.C. § 405(g),

seeking judicial review of a final decision of the Commissioner of Social Security ("the

Commissioner") denying her claim for a period of disability and Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act ("the Act"). The parties have

consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. §

636(c), for all proceedings in this Court. (Doc. 15 ("In accordance with the provisions of 28

U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United

States Magistrate Judge conduct any and all proceedings in this case, … order the entry of

a final judgment, and conduct all post-judgment proceedings.")). *See also* Doc. 16. Upon

consideration of the administrative record, McGee's brief, the Commissioner's brief, and

oral argument presented at the February 5, 2020 hearing before the undersigned

Magistrate Judge, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

## I.  PROCEDURAL HISTORY

McGee applied for a period of disability and DIB, under Title II of the Act, 42 U.S.C. §§ 423-425, on February 22, 2017, alleging disability beginning on November 23, 2016. (Tr. 154-55). Her application was denied at the initial level of administrative review on May 1, 2017. (Tr. 90-94). On May 3, 2017, McGee requested a hearing by an Administrative Law Judge (ALJ). (Tr. 96-97). McGee appeared at a hearing before the ALJ on September 19, 2018. (Tr. 39-66). On February 13, 2019, the ALJ issued an unfavorable decision finding that McGee was not under a disability during the applicable time period. (Tr. 15-38). McGee appealed the ALJ's decision to the Appeals Council, and, on May 15, 2019, the Appeals Council denied her request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-4).

After exhausting her administrative remedies, McGee, proceeding *pro se*, sought judicial review in this Court, pursuant to 42 U.S.C. §§ 405(g). (Doc. 1). The Commissioner filed an answer and the social security transcript on October 15, 2019. (Docs. 10, 11). Both parties filed briefs setting forth their respective positions. (Docs. 12, 13). Oral argument was held before the undersigned Magistrate Judge on February 5, 2020. (Doc. 17). The case is now ripe for decision.

## II.  CLAIM ON APPEAL

---

[1] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 15. ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

Although McGee, who was proceeding *pro se* before this Court, did not clearly enunciate the grounds for her appeal, the Court gleans from her filings and argument at the hearing that her claim on appeal is that the ALJ's decision that she was not disabled during the relevant time period was not based on substantial evidence because the ALJ did not properly consider the medical evidence supporting her claim that she was unable to work during the relevant time period. (Docs. 12, 17).

### III. BACKGROUND FACTS

McGee was born on March 25, 1967 and was almost 50 years old at the time she filed her claim for benefits. (Tr. 42). McGee alleged disability, commencing on November 23, 2016, due to diabetes, ADD, neck problems, back problems, hip problems, and anxiety. (Tr. 170, 174). The date she was last insured was December 31, 2017. (Tr. 170). She obtained her GED and completed cosmetology school. (Tr. 43-44; 175). She has worked as a cosmetologist, an electrician's helper, and as a general manager at several retail establishments and a hotel. (Tr. 45-51; 175). She stopped working as an assistant manager at Ollie's Bargain Outlet due to an injury to her neck in November of 2016 and has not worked since then. (Tr. 50-54, 174). According to the Function Report that McGee completed on February 27, 2017, on a typical day, after showering, she makes herself something to eat, tries to walk around for a few minutes, gives her mom (who has dementia) her medication and cooks dinner for her, and cares for her cat. (Tr. 181-82). She stated that her mom's roommate does the cleaning. (Tr. 182). She enjoys cooking and tries to make complete meals (usually daily), she washes dishes, and she does her own laundry. (Tr. 183). She can drive, and she does her own grocery shopping once a week. (Tr. 184). She is able to pay bills, count change, handle a savings account, and use a

checkbook/money order. (*Id*.). She loves to sew but cannot sit long enough anymore because of her neck pain and cannot read or watch TV for very long because she cannot stay focused. (Tr. 185). She stated that she doesn't like being around others for very long and feels anxiety when she is in crowds. (Tr. 186).

## IV. ALJ'S DECISION

After conducting a hearing, the ALJ made a determination that McGee was not under a disability at any time from November 23, 2016, the alleged onset date, through December 31, 2017, the date last insured, and thus, was not entitled to benefits. (Tr. 33). In her decision, the ALJ first determined that McGee's DLI was December 31, 2017. (Tr. 18, 20). She next began the process of applying the five-step sequential evaluation to McGee's claim. At step one, the ALJ found that McGee had not engaged in SGA during the period from her alleged onset date (November 23, 2016) through her DLI (hereinafter "the relevant time period"). (Tr. 20). Therefore, she proceeded to an evaluation of steps two and three. The ALJ found that, during the relevant period, McGee had severe impairments of diabetes, minor neuropathy, degenerative disc disease of the cervical spine, cervicalgia, radiculopathy of the cervical spine, degenerative disc disease of the lumbar spine, dysthymia, depression, attention deficit hyperactivity disorder, and chronic pain, but that she did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Tr. 20-23). After considering the entire record, the ALJ concluded that, through the DLI, McGee had the RFC to perform a range of light work, except that she could occasionally lift and/or carry twenty pounds, could frequently lift and/or carry ten pounds, could stand and/or walk for six hours per eight-hour workday, could sit for six hours per eight-hour workday, with customary breaks, could occasionally

handle, finger, and feel with her bilateral upper extremities, could not push or pull arm controls with either upper extremity, could not operate handheld vibratory equipment, could not perform overhead work with the bilateral upper extremities, could not climb ramps, stairs, ladders, or scaffolds, could frequently stoop, could never kneel and never crawl, could not operate hazardous moving machinery or equipment where the entire apparatus moves, could not work at unprotected heights, could not drive at work, could perform simple and routine tasks, could experience occasional changes in her work setting or workplace duties, could work in customary proximity to coworkers and supervisors but could not have coordinated closely with supervisors or workers to complete her individual tasks or team tasks, could interact with the public on a casual and infrequent basis, and, due to her physical pain and psychological symptoms, would have been expected to be off-task for five percent of the workday for a period of up to three minutes per hour. (Tr. 23-31). After setting forth her RFC, the ALJ determined that McGee was unable to perform any past relevant work during the relevant period. (Tr. 31-32)  However, considering her age, education, work experience, and RFC, the ALJ concluded that, during the relevant period, there were jobs that existed in significant numbers in the national economy that McGee could have performed, and therefore, found that McGee was not disabled within the meaning of the Act during the period at issue, which was November 23, 2016, through the DLI, which was December 31, 2017. (Tr. 32-33).

## V. DISCUSSION

Eligibility for DIB requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E). "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the [date last insured]." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). A

claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation in determining whether the claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g).

"Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted).  "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

In her written submission and at oral argument, McGee asserted that the ALJ erred in making the assessment that she was not disabled because she did not give proper weight to the various physician's statements. (Doc. 12 at p.12-21, 33-41; Doc. 17). She primarily argues that the ALJ accorded too much weight to Dr. Abraham's opinions because, according to McGee, she only spent ten minutes examining her, and to Dr. Yager's opinion, because he was an elderly doctor and she could tell when she walked in that "he was going to write a false report." (*Id*.).  She also argues that the ALJ did not give enough weight to the opinion of Dr. Rusyniak. Therefore, McGee contends that the ALJ's finding could not have been based on substantial evidence. The Commissioner, on the other hand, asserts that the ALJ provided valid reasons for her findings, that those findings are supported by the applicable law and by substantial evidence, and that the ALJ's conclusion that McGee was not disabled was not in error. (Doc. 13 at pp. 6-15).

The primary question presented by McGee seems to be whether the ALJ's assessment of her medical condition in formulating her RFC was based on substantial evidence. "In assessing whether a claimant is disabled, an ALJ must consider the medical opinions in a case record together with the rest of the relevant evidence received." *Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 870 (11th Cir. 2016) (citing 20 C.F.R. § 404.1527(b)). In addition to the medical evidence, the ALJ is to consider the claimant's daily activities when evaluating the symptoms and severity of an impairment. *Id*. at 871 (citing 20 C.F.R. § 404.1529(c)(3)(i)). A thorough review of the ALJ's decision reveals that the ALJ in this case did take into consideration, not only medical opinion evidence, but the totality of the medical evidence, as well as McGee's written and oral accounts of her daily activities. The ALJ here actually included more stringent restrictions in McGee's RFC than those placed by the majority of the medical doctors who treated or examined her, restricting McGee to light work with a litany of further restrictions that took into account not only her physical impairments, but her mental ones as well. Although McGee spoke during oral argument concerning her *current* medical condition and impairments, this Court is mindful that, during this review, it must consider only the evidence presented to the ALJ and Appeals Council and can only consider whether McGee was disabled during the relevant period, which closed more than two years prior to the hearing in this action.

In her decision, the ALJ included a thorough discussion of the medical evidence. (Tr. 25-31). She reviewed each doctor's examination notes, complaints reported to the doctors by McGee, the findings of objective testing, treatment recommendations, and statements made by the physicians concerning limitations and restrictions. With regard to Dr. Parker, a State agency medical consultant, the ALJ stated:

Dr. Parker, a State agency medical consultant, reviewed the record in April 2017, recommending that the claimant be limited to light work, with slight postural limitations, save occasional ladder use and crawling, and restriction from concentrated exposure to unprotected heights. The undersigned, reviewing the record as developed closer in time to the date last insured, finds somewhat greater degrees of limitation warranted. While the undersigned agrees that a range of light work is appropriate, more nuance is required to accommodate mental health impairments in combination with pain and fatigue from other impairments (Exhibit B2A). While Dr. Parker is supported by his subject matter specialization and history of psychiatric review for the Administration, his conclusions are only partially consistent with the record as later developed, thus entitling his opinion to partial weight.

(Tr. 27). With regard to Dr. Abraham, one of the opinions challenged by McGee, the

ALJ stated:

The claimant met with Dr. Abraham for a physical consultative examination [in] April 2017 (Exhibit B7F). They discussed her record and history. The claimant alleged a constant five to eight of ten in pain, but admitted that medication helped her function. She agreed she could perform self-care, simple chores, laundry, and grocery shopping. She was not using a cane, walker, wheelchair or scooter. She could hold a glass, turn a knob, tie her shoes, and pick up small objects for Dr. Abraham. Psychologically, she was pleasant and cooperative with normal mood and affect. Her neck had an abnormal range of motion. At the same time, she had normal gait and no evidence of ataxia. She could squat. She could mount and dismount the table. She had full strength and reflexes throughout all extremities. There was full grip and no muscle atrophy. She had normal fine and gross manipulative skills. She had full range of motion in the shoulders, elbows, arms, wrists, hips, knees, and ankles. Joints were stable and no tender without any swelling. Her spine had generally normal range of motion but some pain on movement in the cervical and lumbar regions. This has been accommodated.

Save a generalized functional statement that the claimant could sit, stand, walk, and speak on a job, Dr. Abraham provided no specific recommendations. Nevertheless, her comprehensive examination is given partial weight for development of an appropriate residual functional capacity. She did not deteriorate significantly between this exam and the date last insured. The exam was thorough in demonstrating the basic limits of the claimant's residual body functionality during a period of medication and treatment compliance. It is consistent with both the claimant's own allegations of pain as well as the contemporaneous treatment evidence of record, which shows some weakness, pain, and numbness, but not incapacitation. Unlike the opinions of Dr. Rusyniak and Dr. Yager, it is from the relevant period. Unlike Dr. Evans's conclusory opinion, it is not highly disproportionate to objective medical findings over the course of the entire adjudication period. Dr. Abraham

> is supported by her subject matter specialization and history of medical-vocational examinations for the Administration. To the extent any of the claimant's limitations have intensified over the remaining relevant period, the undersigned has fully accommodated such impairments with somewhat greater limitations than those recommended or implied by Drs. Abraham and Parker.

(Tr. 27). The ALJ also noted that Dr. Howard's review of new MRI's of the cervical spine in April of 2017 showed no "significant change" in McGee's cervical spine from the available MRIs taken in 2012 and 2014, which was "indicative of the relative stability of the claimant's musculoskeletal impairments." (Tr. 28).

With regard to her assessment of the Medical Source Statement prepared by Dr. Evans, McGee's treating physician, the ALJ stated:

> Shortly prior to the date last insured, December 2017, Dr. Evans completed a medical source statement (Exhibit B10F). The recommendations are disproportionately intense when compared to the claimant's objective medical presentation over the course of the relevant adjudicatory period. She limited the claimant to less than sedentary work, inconsisten[tally] stating that she would occasionally lift both up to five pounds and up to ten pounds. Similarly inconsistently, she found that the claimant could walk, stand, or sit for an entire hour apiece, but could only walk, stand, or sit for an hour over the course of an entire workday. She also restricted any postural activities whatsoever and any manipulative activities, which are completely outsized to the overall normal gait and less-restricted musculoskeletal features noted throughout the record. Save a remark on leg weakness and driving, there was no narrative underlying basis cited for such extreme restrictions. There was no particular objective examination. Similarly, this source selected multiple answers for single questions on the issue of pain. This internal inconsistency, lack of clarity, and inconsistency with the contemporaneous objective medical evidence of record offsets the support Dr. Evans gains from her long term treating relationship with the claimant. Little weight is due.

(Tr. 28). Even though Dr. Rusyniak and Dr. Yager both examined McGee after the relevant period, the ALJ did consider their records and opinions:

> In January 2018, a week after her date last insured, the claimant saw a neurosurgeon, Dr. Rusyniak. She alleged two months of pain in the arms with numbness down into the hands. He conducted a physical exam. Her gait was normal, as were her reflexes across the body. She had some loss

of sensation and upper extremity weakness. There was no specific pattern. After this exam and discussing her history of pain, Dr. Rusyniak made a series of somewhat hypothetical, somewhat committal statements. He stated he could consider possible surgery of the cervical spine and that it "might" help. He did not state that such procedure was necessary or the only option. He did not state that all other conservative treatment had failed. He also gave his permission to "go ahead" with scheduled surgery. A week later, he issued a treating source statement that the surgery was necessary, would be scheduled upon insurance approval, and that the claimant was not released to work at this time. The last statement *is* functional in nature, but is due little weight. Despite Dr. Rusyniak's subject matter specialization, he had met with the claimant on only one occasion, the opinion fell after the date last insured, and he did not clarify the specific functional limitations which would preclude work activity. He did not restrict her from particular exertional or postural activities. An outright determination that a person cannot work, for disability purposes, is a question of law entirely reserved to the Commissioner. The undersigned has relied more on the objective observations throughout the record and the opinions of the State agency's medical consultant and Dr. Yager. While Dr. Yager's opinions came far later in the record, Dr. Rusyniak's determination is further given lesser weight because it is much less functionally detailed and not as clearly reliant on specific objective medical evidence of record available at the time. The fact of surgery being considered or even recommended is not determinative. The undersigned is not making a determination on whether the claimant medically requires spinal surgery. She may well functionally benefit in a remarkable way. The undersigned does determine that even absent this surgery, she could be accommodated during the relevant adjudicatory period by a residual functional capacity no more restrictive than that provided herein.

An MRI showed a moderate osteophyte complex at C6-7 (Exhibit B11F). Care with Dr. Evans continued in 2018 without significant change (Exhibit B13F). The claimant underwent September 2018 EMG/NCV testing of the extremities. There was possible cervical involvement but the lumbar spine was not indicated, despite its mild degenerative disease.

The claimant sat for a physical consultative examination with Dr. Yager in November 2018 (Exhibit B15F). They discussed the claimant's medical history and functionality prior to the date last insured as well as how her impairments had developed and become better understood in the interim. Dr. Yager conducted a physical examination of the claimant and provided a series of functional recommendations.

His observations are largely consistent with the objective treatment and examination evidence generated prior to the claimant's date last insured. The claimant exhibited some visual limitations on right side to bilateral

11

presentation. She did not sense sharp pinpricks on much of her face, arms, or legs. Her vibratory sense was decreased and her reflexes were reduced. She could twist and bend her spine about twenty degrees to each side. She had some cervical spasms. There was no atrophy over the body and no other noted spasms. At the same time, she could mount and dismount the exam table without much difficulty. Her dexterity was normal and she gesticulated using her arms while speaking without apparent difficulty *(cf.* Dr. Rusyniak 's recommendations) She exhibited some lower limb weakness due to using Gower's maneuver to arise from chair sitting. Reviewing her EMG/NCV tests, Dr. Yager noted only mild neuropathy. He opined that this neuropathy was minimal and would not prevent work-related activities. The undersigned has fully accommodated this limitation. He opined that she could have some undefined lift and carrying limits from her spine but exhibited no denervation. Due to visual problems, she would not use moving equipment or automobiles on the job.

He completed a medical source statement, placing the claimant at a range of medium work. Her combined cervical spine degeneration and diabetes warranted reduced exertion to sitting four hours at a time and standing and walking for two hours. She did not need a cane. She had no trouble reaching or manipulating and her use feet for controls was uncompromised. She could perform frequent postural activities (Exhibit B15F).

This assessment is given partial weight and a somewhat greater degree of restriction is required due to the claimant's impairment statuses prior to the date last insured. While Dr. Yager is supported by reliance on a well-established record and his neurological subject matter specialization, the examination was completed nearly a year after the date last insured. At the same time the objective examination results and the identified impairments are largely consistent with those in the record prior to the date last insured *(cf* Dr. Rusyniak's opinion; though each are neurologic specialists, Dr. Yager went more into functionally-relevant depth). Little had changed and Dr. Yager's recommendations are supported by his objective findings and functional predictions in the detailed examination narrative and tied explicitly to particular severe impairments.

(Tr. 28-30).

Based on her thorough review of the medical records and other evidence,

the ALJ concluded the following with regard to McGee's RFC:

In sum, the claimant's impairments during the relevant period can be accommodated by a residual functional capacity assessment at a range of light work. This is supported by the objective medical findings between the alleged onset date and the date last insured, the opinion statements, and

the claimant's own testimony. All are partially corroborated by the findings and opinions outside of the adjudication period.

Due to the claimant's degenerative spinal conditions, with chronic pain and radiculopathy she is appropriately limited to light work. Despite some reports of numbness, repeated examinations showed good manipulative and dexterous powers in the bilateral hands and fingers. The claimant likes to read, sew, cook, and use her phone. She can therefore be accommodated with occasional manipulative functions. Due to her radiating neck pain, she cannot work overhead, use vibrating handheld tools or use arm controls. Based upon her consultative examinations and the treatment notes generally showing normal ambulation but problems in movement of the spine, she will stay off staircases and ladders, and cannot kneel or crawl. Involvement of the lower feet, particularly as noted by Dr. Evans and Dr. Yager, warrant keeping her from using foot controls or being around unprotected heights. The claimant's combined mental health impairments and pain and fatigue associated with her physical impairments will limit her to a range of unskilled work. Due to her moderate limitations in understanding and remembering as well as concentrating and maintaining attention, she will perform simple routine tasks. Her moderate difficulties interacting with others will still allow her to work in normal proximity to coworkers and supervisors but without close coordination in her daily tasks. She will not interact with the public save on a casual and infrequent basis. Finally, the claimant's conditions all combine to cause some distraction. Her ADHD is well controlled, but persists. Her back pain is medicated, but still breaks through somewhat giving her radiating pain and headaches. All of this warrants a finding that she will be off task for five percent of the workday.

While the relevant period is rather small, it has benefitted from an extensive record which covers care for all of the claimant's impairments. It has been bolstered by the analysis and opinion from the State agency as well as the repeated opinions of consulting examiners. While the record continued to develop after the date last insured, these notes and opinions were also considered to the extent they show[ed] consistency in treatment and further illuminated the nature and extent of the claimant's impairments. Finally, the testimony of the claimant herself was supportive of a range of light work. While she does not retain the functional capacity she had prior to onset, she still performs a number of activities and has responded quite well to treatment. This supports a range of persisting abilities.

(Tr. 31).

A claimant's RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. It is an "administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. It represents **the most, not the least**, a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *2 (emphasis added). The RFC assessment is based on "all of the relevant medical **and other evidence**." 20 C.F.R. § 404.1545(a)(3). In assessing a claimant's RFC, the ALJ must consider only limitations and restrictions attributable to medically determinable impairments, i.e., those that are demonstrable by objective medical evidence. SSR 96-8p, 1996 WL 374184, at *2. Similarly, if the evidence does not show a limitation or restriction of a specific functional capacity, the ALJ should consider the claimant to have no limitation with respect to that functional capacity. Id. at *3. The ALJ is **exclusively** responsible for determining an individual's RFC. 20 C.F.R. § 404.1546(c).

It is well-settled that the ultimate responsibility for determining a claimant's RFC, in light of the evidence presented, is reserved to the ALJ, not to the claimant's physicians or other experts. *See* 20 C.F.R. § 404.1546. "[T]he ALJ will evaluate a [physician's] statement [concerning a claimant's capabilities] in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ." *Green v. Soc. Sec. Admin.,* 223 F. App'x 915, 923 (11th Cir. 2007); *see also Pritchett v.*

*Colvin*, Civ. A. No. 12-0768-M, 2013 WL 3894960, at *5 (S.D. Ala. July 29, 2013) (holding that "the ALJ is responsible for determining a claimant's RFC"). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Jones v. Colvin*, CA 14-00247-C, 2015 WL 5737156, at *23 (S.D. Ala. Sept. 30, 2015) (quoting *Ricks v. Astrue*, No. 3:10-cv-975-TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) (internal quotation marks and citations omitted)). Based on the Court's review of the record and the ALJ's decision, the Court finds that the ALJ did so here.

The relevant social security regulations[2] provide that "medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [their] symptoms, diagnosis and prognosis what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). "When weighing each medical opinion, the ALJ must consider whether the doctor has examined the claimant; the doctor's relationship with the claimant; the medical evidence supporting the doctor's opinion; how consistent the doctor's opinion is with the record as a whole; and the doctor's specialization." *Muniz v. Comm'r of Soc. Sec.*, 716 F. App'x 917, 919 (11th Cir. 2017) (citing 20 C.F.R. § 416.927(c); *see also Nichols v. Comm'r, Soc. Sec. Admin.*, No. 16-11334, 2017 WL 526038, at * 5 (11th Cir. Feb. 8, 2017) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)) (stating that "[i]n determining how much weight to give a

_____

[2] Because McGee filed her claim for social security benefits prior to March 27, 2017, the applicable rules for evaluating medical opinion evidence are set forth in 20 C.F.R. § 404.1527. *See* 20 C.F.R. §§ 404.614, 404.1527.

medical opinion, the ALJ considers such factors as the examining or treating relationship, whether the opinion is well-supported, whether the opinion is consistent with the record, and the doctor's specialization"). Based on its review of the ALJ's decision and the record, the Court finds that the ALJ properly applied the appropriate standard in evaluating the weight to be accorded the medical opinions in this case.

It is well-established that it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. *See Chester*, 792 F.2d at 131. This Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. Having reviewed the ALJ's decision and the transcript and considered the arguments made by McGee, the Court finds that the ALJ's determination that McGee was not disabled during the relevant time period is supported by substantial evidence and based on proper legal standards. The Court finds that the ALJ properly weighed the medical evidence by comparing each doctor's subjective opinions with objective findings in the record, each other's examination findings, and information provided by McGee in her Function Report and during the hearing before the ALJ. This is not to say that McGee's condition has not changed and possibly deteriorated since the DLI; however, that issue is not before this Court.

## CONCLUSION

Based on the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **20th** day of **July, 2020**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**